■ Town of Clarkstown, Appellant, v M.R.O. Pump & Tank, Inc., et al., Respondents. [822 NYS2d 576]—

In an action, inter alia, to enjoin the defendants M.R.O. Pump & Tank, Inc., Michael Oliva, and Deborah Oliva, also known as Deborah Cetrone, from storing materials or equipment on certain parcels of property, or from taking any action that might expand their alleged nonconforming use on the property, the plaintiff appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Rockland County (Bergerman, J.), dated December 21, 2004, as, after a nonjury trial, declined to award injunctive relief and declared that the defendants' use of the property in connection with a general construction business is a legal nonconforming use, and that the defendants Michael Oliva and Deborah Oliva, also known as Deborah Cetrone, are not required to obtain site plan approval from the plaintiff for their use of the property.

Ordered that the judgment is modified, on the facts, by adding a provision thereto enjoining the respondents from selling or distributing fuel to third parties; as so modified, the judgment is affirmed insofar as appealed from, with costs to the respondents.

The instant action involves three adjoining parcels of property in the Town of Clarkstown (hereinafter the Town), known as lots A, B, and C, which are owned by the defendants Michael

Oliva and Deborah Oliva, also known as Deborah Cetrone (hereinafter collectively Oliva), and used by Oliva's company, the defendant M.R.O. Pump & Tank, Inc. (hereinafter MRO), and two MRO-affiliated companies which are not parties to this action. The Town commenced this action, inter alia, to enjoin the defendants from continuing or expanding their nonconforming use of the property as a general construction yard. It is undisputed that Oliva purchased lot A in 1986 and purchased lots B and C in 1995. MRO operates a nonconforming general construction yard on lots A and B and has an office on lot A. The defendants do not use lot C. The dwelling on lot A, where MRO has its office, was constructed nine years before the enactment of the Town's zoning code. When Oliva purchased lot A and at all times thereafter, it had been zoned light industrial. Oliva obtained a building permit and certificate of occupancy (hereinafter CO) No. 86-1789 for lot A to enlarge the office space in the dwelling and provide accessory parking for five to ten vehicles. In its permit application, MRO indicated that it used a portion of lot A to store construction material and equipment. The Town contends that the defendants' use of lot A violates the CO because parking was expanded, screening trees were removed, a retaining wall was built without a permit, and open storage containers were placed within a buffer zone. The defendants counter that their use of lot A conforms to the CO.

Lot A also has another pertinent CO, which allows two underground fuel storage tanks and a fuel pump. At trial, Michael Oliva admitted that he sells fuel from those tanks to third parties. The Town supervisor testified that such distribution requires a special permit, which the defendants have not obtained. The judgment appealed from was silent on this issue.

In 1998 the defendants applied for a building permit, encompassing lots A and B, to allow a tenant school bus company (which was already leasing portions of the lots) to park vehicles and operate a trailer office. After the Town denied the permit, the school bus company, which had been a tenant for about 16 months, vacated the property. The Town contends that the defendants abandoned their nonconforming use of lot B as a general construction yard during the school bus company's tenancy. Alternatively, the Town contends that the defendants impermissibly increased the nonconforming use of lot B by increasing the scope and intensity of the general construction yard. The defendants counter that they never abandoned their use of lot B as a general construction yard, even during the school bus company's tenancy. Further, the defendants assert that the increased scope and intensity of their use of lot B as a construction yard is not improper.

Following a nonjury trial, the Supreme Court declined to award the Town an injunction, determining, inter alia, that the defendants had a vested right in its mixed use of lot A, that the use of lot B as a general construction yard was a legal nonconforming use, and that the defendants did not need site plan approval to use lots A and B as a general construction yard.

The defendants did not abandon their nonconforming use of lots A and B by leasing portions thereof to a school bus company for approximately 16 months (see Clarkstown Town Code § 290-29 [C]; *James H. Maloy, Inc. v Town Bd. of Town of Guilderland,* 92 AD2d 1056 [1983]). During the school bus company's tenancy, there is no evidence that the defendants permanently intended to give up their right to use those lots as a general construction yard. During that period, the Town building inspector observed at least 10 large trucks parked on lot A, and in submitting its permit application for the school bus company's use of the premises, the defendants described portions of lot A as containing "construction material storage," a gas pump, and the existing office dwelling. Additionally, the Town's deputy director of environmental control testified that between 1990 and April 2000, MRO cleared additional portions of the lots for use as a construction yard.

Further, the defendants did not impermissibly alter and increase their nonconforming use of lot B as a general construction yard. The evidence adduced at trial demonstrated that lot B has been used as a general construction yard since 1930, which predates the enactment of the Town's zoning code by nine years. Moreover, MRO has continually used lot B as a construction yard since it purchased the lot in 1995. Accordingly, although Michael Oliva testified that MRO's use of lot B since Oliva purchased the lot is of greater intensity than that previously employed by the lot's prior owners, the increase in volume of the same kind of nonconforming use as has occurred on the lot for over 60 years, does not constitute a per se impermissible expansion of the nonconforming use (see *Matter of Smith v Board of Appeals of Town of Islip,* 202 AD2d 674, 676 [1994]; *Town of Gardiner v Blue Sky Entertainment Corp.,* 213 AD2d 790, 791 [1995]; *Matter of Tartan Oil Corp. v Board of Zoning Appeals of Town of Brookhaven,* 213 AD2d 486, 488 [1995]).

The Town also argues that the trial court erred in finding that the defendants had a vested right to use lot A for an office and a general construction yard on the grounds that it erroneously issued the defendants a building permit and CO No. 86-1789. However, the Town did not contend before the trial court

that this permit and CO No. 86-1789 had been improperly issued. Accordingly, the Town's argument on this point is not preserved for appellate review (*see* CPLR 5501 [a]).

However, in light of Michael Oliva's admission that MRO sells fuel to commercial third-party entities without the necessary permits, the trial court erred in not awarding the Town an injunction to the extent of prohibiting the defendants from selling or distributing fuel to third parties unless and until they obtain the necessary permit and variance (*see* Clarkstown Town Code § 290-17 [G]; *Matter of Green Point Sav. Bank v Board of Zoning Appeals,* 281 NY 534 [1939]).

The Town's remaining contentions are either academic or need not be reached in light of our determination. Luciano, J.P., Rivera, Lifson and Covello, JJ., concur.